WILSON, Circuit Judge,
dissenting:
Under the Majority’s decision, state law can dictate the scope of the Constitution’s protections. Thomas-Arthur raises a method-of-execution claim proposing the firing squad as an execution alternative, and the Majority finds that state law defeats this constitutional claim. By misreading an Alabama statute, .the Majority creates a conflict between the claim and state law. The Majority then resolves that faux conflict in favor of state law, taking the unprecedented step of ascribing to states the power to legislatively foreclose constitutional relief. These missteps nullify countless prisoners’ Eighth Amendment right to a humane execution.
I. INTRODUCTION
The Eighth Amendment guarantees a death row prisoner the right to relief when he faces a method of execution that is “sure or very likely to cause serious illness and needless suffering” and there is a “feasible” and “readily implemented”- alternative that “significantly reduce[s] -a substantial risk of severe pain.” Baze v. Rees, 553 U.S. 35, 50-52, 128 S.Ct. 1520, 1531-32, 170 L.Ed.2d 420 (2008) (plurality opinion) (internal quotation marks omitted); Glossip v. Gross, 576 U.S. -, -, 135 S.Ct. 2726, 2737, 192 L.Ed.2d 761 (2015). Arthur seeks to vindicate this right. He asserts that Alabama’s current three-drug lethal injection protocol is sure or very likely to cause him severe pain, and he seeks to amend his complaint to propose the firing squad as an execution alternative.[1] The firing squad is a well-known, straightforwavd procedure that is regarded as “relatively quick and painless.”[2] See Glossip, 135 S.Ct. at 2739 (internal quotation marks omitted), Baze, 553 U.S. at 48, 128 S.Ct. at 1530. And one state has recently used the firing squad to execute a prisoner. See Kirk Johnson, Double Murderer Executed by Firing Squad in Utah, N.Y. Times (June 18, 2010), www.nytimes. com/2010/06/19/us/19death.html?_r=0.
Arthur should be permitted to amend his complaint to include the firing squad as an execution alternative to Alabama’s le *1320 thal injection protocol. The firing squad is a potentially viable alternative, and Arthur may be entitled to relief under Baze and Glossip based on that method of execution.
Arthur requested to amend his complaint shortly after the Supreme Court confirmed in Glossip that prisoners must plead and prove an execution alternative to obtain method-of-execution relief.[3] The district court denied Arthur’s request on futility grounds, finding that the “firing squad is not permitted by [an Alabama] statute and, therefore, is not a method of execution that could be considered either feasible or readily implemented by Alabama at this time.”
The Majority now affirms that finding. The Majority determines that the firing squad is not feasible and readily implemented because § 15-18-82.1 of the Alabama Code does not authorize the firing squad. Thus, according to the Majority, a state can restrict a prisoner’s access to Eighth Amendment relief by legislatively rejecting a viable execution alternative.
The Majority’s analysis of Arthur’s request to amend his complaint is legally flawed and has unacceptable consequences for death row prisoners throughout this circuit.[4] First, the Majority misreads § 15-18-82.1; that statute is not a barrier to Arthur relying on the firing squad. The plain language of § 15-18-82.1 permits Alabama to turn to the firing squad under the circumstances presented here.
Section 15-18-82.1 states, in relevant part:
(c) If electrocution or lethal injection is held to be unconstitutional by ... the United States Supreme Court under the United States Constitution, or if the United States Supreme Court declines to review any judgment holding a method of execution *1321 to be unconstitutional under the United States Constitution made by ... the United States Court of Appeals that has jurisdiction over Alabama, all persons sentenced to death for a capital crime shall be executed by any constitutional method of execution.
[[Image here]]
(h) No sentence of death shall be reduced as a result of a determination that a method of execution is declared unconstitutional under the Constitution of Alabama of 1901, or the Constitution of the United States. In any case in which an execution method is declared unconstitutional, the death sentence shall remain in force until the sentence can be lawfully executed by any valid method of execution.
Ala. Code § 15-18-82.1 (2002). The Majority concludes that Alabama cannot deviate from a prisoner’s designated method of execution unless electrocution or lethal injection is declared per se unconstitutional.[5] Because no court has declared electrocution or lethal injection per se unconstitutional, the Majority holds that § 15-18-82.1 forbids the firing squad.
This interpretation of § 15-18-82.1 does not pass muster. Subsection (h) allows Alabama to turn to the firing squad—a “valid method of execution”—in “case[s]” where our court declares Alabama’s planned “execution method” for a prisoner unconstitutional. See § 15-18-82.1(h). Alabama’s planned “execution method” for Arthur is Alabama’s three-drug lethal injection protocol, and Arthur claims that the protocol is unconstitutional. See id. If our court agreed with him, then subsection (h) would allow Alabama to utilize the firing squad to enforce Arthur’s death sentence. Because this case could implicate subsection (h) and open the door to the firing squad, § 15-18-82.1 is not a barrier to Arthur relying on the firing squad. Arthur’s firing-squad claim thus conflicts only with the Majority’s flawed interpretation of Alabama law, not Alabama law itself.
Second, even if § 15-18-82.1 did not permit the firing squad here, the Majority’s conclusion that the statute precludes Arthur from relying on the firing squad would still be erroneous. The Majority contravenes Baze and Glossip, as well as the Supremacy Clause, in relying on a state statute to limit Arthur’s access to Eighth Amendment relief. Under Baze and Glossip, a state cannot make an execution alternative not feasible and readily implemented by legislatively rejecting the alternative. A state’s rejection of an execution alternative is irrelevant to the “feasible and readily implemented” inquiry. Moreover, in holding that a state can dictate that inquiry and foreclose an execution alternative, the Majority infringes the Supremacy Clause. The Majority’s holding affords states the power to thwart viable method-'of-execution claims. That is unprecedented. States cannot render an execution alternative not feasible and readily implemented—and thereby insulate themselves from constitutional scrutiny—by opposing the alternative through legislation or any other means. The Supremacy Clause precludes that type of state incursion on the Eighth Amendment.
Finally, the practical consequences of the Majority’s mistakes are deeply trou *1322 bling. The Majority’s decision nullifies countless prisoners’ right to a humane execution. Based on the Majority’s approach to § 15-18-82.1, Alabama prisoners such as Arthur must rely on lethal-injection-based execution alternatives[6] to obtain method-of-execution relief. A myriad of Florida prisoners are likewise limited to lethal-injection-based alternatives because Florida has a statute that is identical to § 15-18-82.1, compare Ala. Code § 15—18— 82.1,.with Fla. Stat. § 922.105 (2005). However, due to the scarcity of and secrecy surrounding lethal injection drugs, identifying an available lethal-injection-based alternative is a Sisyphean task. Consequently, relief under Baze and Glossip is now a mirage for prisoners across Alabama and Florida.
II. THE PLAIN LANGUAGE OF § 15-18-82.1 PERMITS THE FIRING SQUAD.
Arthur’s request to die by the firing squad is not at odds with Alabama law. The plain language of § 15-18-82.1 permits Alabama to turn to the firing squad under the circumstances presented here. The Majority erroneously concludes that the statute bars Alabama from using the firing squad to execute Arthur. The Majority’s misreading of the statute not only creates a faux conflict with Arthur’s firing-squad claim but also impairs Alabama’s ability to enforce the death penalty.
Section 15-18-82.1 states:
(a)A death sentence shall be executed by lethal injection, unless the person sentenced to death affirmatively elects to be executed by electrocution.
(b) A person -convicted and sentenced to death for a capital crime at any time shall have one opportunity to elect that, his or her death sentence be executed by electrocution. The election for death by electrocution is waived unless it is personally made by the person in writing and delivered to the warden of the correctional facility within 30 days after the certificate of judgment pursuant to a decision by the Alabama Supreme Court affirming the sentence of death or, if a certificate of judgment is issued before July 1, 2002, the election must be made and delivered to the warden within 30 days after July 1, 2002.
(c) If electrocution or lethal injection is held to be unconstitutional by the Alabama Supreme Court under the Constitution of Alabama of 1901, or held to be unconstitutional by the United States Supreme Court under the United States Constitution, or if the United States Supreme Court declines to review any judgment holding a method of execution to be unconstitutional under the United States Constitution made by-.the Alabama Supreme Court or the United States Court of Appeals that has jurisdiction over Alabama, all persons sentenced to death for a capital crime shall be executed by any constitutional method of execution.
[[Image here]]
(f) Notwithstanding any law to the contrary, a person authorized by state law to prescribe medication and designated by the Department of Cor *1323 rections may prescribe the drug or drugs necessary to compound a lethal injection. Notwithstanding any law to the contrary, a person authorized by state law to prepare, compound, or dispense medication and designated by the Department of Corrections may prepare, compound, or dispense a lethal injection. ,
[[Image here]]
(h) No sentence of death shall be reduced as a result of a determination that a method of execution is declared unconstitutional under the Constitution of Alabama of 1901, or the Constitution of the United States. In any case in which an execution method is declared unconstitutional, the death sentence shall remain in force until the sentence can be lawfully executed by any valid method of execution.
Ala. Code § 15-18-82.1. Alabama enacted this section in 2002 when it first changed its default method of execution from electrocution to lethal injection. In doing so, Alabama.shrewdly expected challenges to the constitutionality -of lethal injection and its administration of lethal injection. Section 15-18-82.1 not only prescribes lethal injection- as the default method of execution but also establishes contingency plans in the event that: (1) lethal injection is declared per se unconstitutional or (2) Alabama’s lethal injection-protocol is declared unconstitutional.
Subsections (a) and (b) of § 15-18-82.1 designate lethal injection as Alabama’s primary method of execution, while affording prisoners a one-time opportunity to choose electrocution as their designated method in lieu of lethal injection. And subsections (c) and (h) afford Alabama the flexibility to deviate from a prisoner’s designated method of execution and specific execution protocol if either is declared unconstitutional. Those subsections serve as complementary safety valves, ensuring that Alabama can fulfill its goal of carrying out executions. Subsection (c) guarantees Alabama flexibility by providing that Alabama can utilize “any constitutional method of execution” if lethal injection or electrocution is struck down as per se unconstitutional. § 15-18-82.1(c). Subsection (h) complements subsection (c), as it protects Alabama’s ability to carry out an execution when a prisoner successfully attacks the specific lethal-injection or electrocution protocol that Alabama plans to use to kill him. That subsection states that Alabama can turn to “any valid method of execution” in “any case” in which its planned “execution method is declared unconstitutional.” § 15-18-82.1(h).
Arthur’s designated method of execution is lethal injection, as he did not opt for electrocution during the time period allotted in subsection (b). See § 15-18-82.1(a), (b). Pursuant to subsection (f), the Alabama Department of Corrections has elected to carry out Arthur’s lethal injection using a three-drug, midazolam-based ’protocol. Arthur asserts that' this planned “execution method” violates the Eighth Amendment. See § 15-18-82.1(h). If our court agreed with Arthur, then Alabama would be able to resort to “any valid method of execution,” including the firing squad, to fulfill its goal of executing Arthur. See id.; Glossip, 135 S.Ct. at 2732 (noting that the firing squad is a presumably valid, constitutional method of execution). As such, through this litigation, § 15-18-82.1(h)’s safety valve could be implicated, thereby opening the door to the firing squad. The firing squad is a plausible execution alternative in Alabama.
However, the Majority departs from the plain language of § 15-18-82.1 and con- *1324 eludes, that the-statute bars the firing squad here.-The Majority makes a threshold error by determining that Alabama currently authorizes both electrocution and lethal injection as methods of execution for Arthur. See Maj. Op. at 1316-17 (“Alabama has chosen death by lethal' injection or electrocution.”). Based on that finding, the Majority suggests that Arthur cannot rely on the firing squad because he has not challenged both lethal injection and electrocution. But the text of subsections (a) and (b) belie the Majority’s conclusion that Alabama has “chosen” both lethal injection and electrocution for Arthur. Because Arthur did not opt for electrocution, he “shall be executed by lethal injection.” See Ala. Code § 15-18-82.1 (a), (b). Therefore at this time § 15-18-82.1 authorizes Alabama to kill Arthur only by lethal injection. Alabama has not “chosen” electrocution for Arthur merely because electrocution is mentioned in the statute as a contingency option. If that were the case, then “any valid method of execution” would also be “chosen” for Arthur. See § 15—18—82.1(h). Moreover, the Majority’s suggestion that Arthur was required to attack electrocution and lethal injection to trigger § 15-18-82.1’s safety valves is clearly inconsistent with the statute. Neither subsection (c) nor subsection (h) ■ states that lethal injection and electrocution must be struck down to trigger its safety valve.
The Majority also erroneously determines that under § 15-18-82.1 Alabama can turn to the firing squad only if lethal injection or electrocution is declared per se unconstitutional.[7] See Maj. Op. at 1316 (suggesting that Alabama would have authority to use the firing squad if a court struck down “as unconstitutional either electrocution or lethal injection”). And since no court has declared either method per se unconstitutional, the Majority finds that § 15-18-82.1 precludes Alabama from using the firing squad in this case. A proper textual analysis reveals that subsection (h) forecloses this reading of the statute.
As noted above, subsection (h) states:
In any case in which an execution method is declared unconstitutional, the death sentence shall remain in force until the sentence can be lawfully executed by any valid method of execution.
Ala. Code § 15-18-82.1(h). At first glance, it is possible to read this sentence in a manner consistent with the Majority’s interpretation of § 15-18-82.1. That is, the sentence could be interpreted as permitting Alabama to turn to an alternative method of execution, such as the firing squad, only if lethal injection or electrocution is declared per se unconstitutional. But because, as the Majority concludes, subsection (c) stands for that exact proposition, interpreting subsection (h) to convey the same message violates an elementary rule of statutory interpretation—that we must give effect to each provision. See United States v. Butler, 297 U.S. 1, 65, 56 S.Ct. 312, 319, 80 L.Ed. 477 (1936) (“These words cannot be meaningless, else they would not have been used.”). The correct interpretation of subsection (h)—and the only interpretation that avoids surplus-age—is that, if the specific “execution method” in a “case” is declared unconstitutional, Alabama can resort to “any valid method of execution.” See Ala. Code § 15-18-82.1(h).
This interpretation is also consistent with the subsections immediately preced *1325 ing subsection (h). Subsections (f) and (g) charge the Department of Corrections with the administration of executions. See § 15—18—82.1(f), (g). Specifically, subsection (f) provides that the Department of Corrections shall designate who selects the drugs used in the administration of lethal injection, and subsection (g) exempts from Alabama’s ordinary rulemaking procedure the Department of Corrections’s “policies and procedures” for administering executions. See § 15-18-82.1(f), (g). Immediately following this discussion, subsection (h) is correctly understood to discuss the constitutionality of the Department of Corrections’s chosen execution protocol. See An-tonin Scalia & Bryan A. Garner, Reading Law 167 (2012) (“Context is a primary determinant of meaning.”); K Mart Corp. v. Cartier, Inc., 486 U.S. 281, 291, 108 S.Ct. 1811, 1818, 100 L.Ed.2d 313 (1988) (“In ascertaining the plain meaning of the statute, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole.”). Based on the plain language of § 15-18-82.1, the statute permits Alabama to turn to the firing squad when its planned execution protocol for a particular prisoner is declared unconstitutional. The Majority’s interpretation clearly fails.
Yet, even assuming that the plain language of § 15-18-82.1 is ambiguous and the Majority’s interpretation is plausible, the statute must still be read to permit the firing squad in this case. In the face of such ambiguity, an interpretation that “furthers rather than obstructs [the statutory textj’s purpose should be favored.” See Scalia, supra, at 63; SEC v. C.M. Joiner Leasing Corp., 320 U.S. 344, 350, 64 S.Ct. 120, 123, 88 L.Ed. 88 (1943) (“[CJourts [sha]ll construe the details of an act in conformity with its dominating general purpose.”). This rule of statutory construction militates against the Majority’s interpretation of § 15-18-82.1,
The purpose of subsections (c) and (h) is clear: to ensure that Alabama can enforce the death penalty through an alternative form of execution when its chosen means of executing a prisoner is declared unconstitutional. Under the reading described above, § 15-18-82.1 provides Alabama the authority to (1) turn to an alternative form of execution upon a per se finding that lethal injection or electrocution is unconstitutional, see Ala. Code § 15-18-82.1(c), and (2) employ “any valid method of execution” when its specific execution protocol is declared unconstitutional, see § 15-18-82.1(h). In contrast, the Majority’s interpretation affords Alabama the authority to use an alternative form of execution only when lethal injection or electrocution is declared per se unconstitutional. This reading plainly limits Alabama’s ability to turn to an alternative form of execution in the face of constitutional scrutiny. The interpretation obstructs the purpose of subsections (c) and (h) and impairs Alabama’s ability to enforce the death penalty.
The Majority’s determination that § 15-18-82.1 precludes Arthur from relying on the firing squad is inconsistent with the plain language of the statute and the purpose underlying subsections (c) and (h). Arthur’s firing-squad claim conflicts only with the Majority’s flawed interpretation of Alabama law, not Alabama law itself.
III. THE MAJORITY’S RELIANCE ON STATE LAW CONTRAVENES BAZE, GLOSSIP, AND THE SUPREMACY CLAUSE.
Even assuming that § 15-18-82.1 does not permit the firing squad under the present circumstances, the Majority’s dis *1326 missal of Arthur’s claim would still be erroneous. The Majority’s rejection of the firing squad rests on its determination that, if a state legislatively opposes an execution alternative, then the alternative is not feasible and readily implemented and method-of-execution relief is foreclosed. State law however is irrelevant to the Eighth Amendment inquiry established by Baze and Glossip, and more fundamentally, under the Supremacy Clause, state law cannot thwart a viable constitutional claim. In relying on state law to deny Arthur relief, the Majority commits constitutional error. The Majority’s decision in effect turns Baze and Glossip’s method-of-execution test—a test designed to protect the Eighth Amendment rights of death row prisoners—into a test that narrows, and in many cases defeats, those rights. This transformation is not only unprecedented, it is completely unmoored from precedent.
A. Baze and Glossip
1. An Overview of Baze and Glossip
In Baze, the Supreme Court first held that a method-of-execution claimant must identify a “feasible” and “readily implemented” execution alternative that “significantly reduce[s] a substantial risk of severe pain.” See Baze, 553 U.S. at 52, 128 S.Ct. at 1532; Glossip, 135 S.Ct. at 2737. According to the Baze Court, “[i]f a [sjtate refuses to adopt ... an alternative in the face of these documented advantages, without a legitimate penological justification for adhering to its current method of execution, then [the] [s]tate’s refusal ... can be viewed as ‘cruel and unusual.’” Baze, 553 U.S. at 52, 128 S.Ct. at 1532. Baze neither placed any restrictions on the categories of execution alternatives that a claimant can rely on to demonstrate such cruel and unusual conduct, nor limited possible alternatives to those that the claimant’s state has approved. See id., 128 S.Ct. at 1532. To satisfy Baze, an alternative must simply have the “documented advantages” of being “feasible, readily implemented,” and significantly safer than the state’s designated execution method. See id., 128 S.Ct. at 1532.
Subsequently, Glossip .confirmed this “execution alternative” requirement, stating:
The controlling opinion [in Baze] summarized the requirements of an Eighth Amendment method-of-execution claim as follows: ... ■ the condemned prisoner [must] establish[ ] that the [s]tate’s [method of execution] creates a demonstrated risk of severe pain. And he must show that the risk is substantial when compared to the known and available alternatives.
Glossip, 135 S.Ct. at 2737 (internal quotation marks omitted). Consistent with Baze, Glossip also indicated that, when attempting to satisfy the “execution alternative” requirement, prisoners are neither limited to certain categories of execution alternatives nor constrained by state-approved alternatives. See id. at 2739 (stating that a prisoner is required only “to plead and prove a known and available alternative”); id. (rejecting the dissent’s argument that “the methods of execution employed before the advent of lethal injection,” such as the firing squad, are not permissible execution alternatives).
In Glossip, the prisoners argued that Oklahoma’s lethal injection cocktail posed an unacceptable risk of cruel and unusual punishment. They proposed a different cocktail as an execution alternative. However, the Court found that the proposed cocktail was not a “known and available” *1327 alternative because the record showed that “despite a good-faith effort,” Oklahoma was unable to procure the drugs in the cocktail. Id. at 2738. Due to the scarcity of those drugs, it was functionally impossible for Oklahoma to obtain them. See id. at 2733-34, 2738.
Our court has applied the “execution alternative” requirement on multiple occasions. We have found, in accord with Glos-sip, that a proposed, execution alternative does not satisfy the requirement when a state is unable to obtain the materials necessary for the alternative. See, e.g., Brooks v. Warden, 810 F.3d 812, 820-21 (11th Cir. 2016) (concluding that, due to scarcity, the lethal injection cocktail that the prisoner proposed as an execution alternative was not available to Alabama), cert. denied sub nom. Brooks v. Dunn, — U.S. -, 136 S.Ct. 979, 193 L.Ed.2d 813 (2016); Chavez v. Fla. SP Warden, 742 F.3d 1267, 1274 (11th Cir. 2014) (Carnes, C.J., concurring) (rejecting a method-of-execution claim in part because the prisoner admitted that the relevant lethal injection drug alternatives were unavailable), cert. denied sub nom. Chavez v. Palmer, — U.S. -, 134 S.Ct. 1156, — L.Ed.2d — (2014). We have never concluded that an execution alternative fails to satisfy Baze and Glossip because a state has rejected the alternative by legislation or some other means.
2. The Majority’s Misapplication of Baze and' Glossip.
Although neither Baze nor Glossip holds that an execution alternative must be state authorized, the Majority imposes such a requirement on Arthur. The Majority finds that, if a state legislatively rejects an alternative, the alternative is not feasible and readily implemented. But the “feasible and readily implemented” inquiry cannot serve as a vessel for the Majority’s novel requirement. State opposition to an execution alternative—through legislation or any other means—has no bearing on the “feasible and readily implemented” inquiry as set forth in Baze and Glossip.
Whether an execution is feasible and readily implemented is considered separately from a state’s rejection of the alternative. Again, in setting forth the “execution alternative” requirement, Baze emphasized:
[An] alternative procedure must be feasible, readily implemented, and in fact significantly reduce a substantial risk of severe pain. If a [s]tate refuses to adopt such an alternative in the face of these documented advantages, without a legitimate penological justification for adhering to its current method of execution, then a [s]tate’s refusal to change its method can be viewed as “cruel and unusual” under the Eighth Amendment.
Baze, 553 U.S. at 52, 128 S.Ct. at 1532. Hence, in considering a method-of-execution claim, we determine whether a proposed alternative has “documented advantages,” such as being feasible and readily implemented, and then we consider separately the state’s refusal to adopt the alternative. See id., 128 S.Ct. at 1532. Those are clearly distinct inquiries. An alternative can have the “documented advantages” of being “feasible” and “readily implemented” even though a státe “refuses to adopt” the alternative. See id., 128 S.Ct. at 1532. A state’s decision to embrace or reject an alternative therefore does not bear on the “feasible and readily implemented” inquiry. Yet, under the Majority’s reasoning, when a state refuses to adopt an execution alternative—by, for example, passing legislation that rejects the alternative and then *1328 adhering to that legislation—the alternative is ipso facto not feasible and readily implemented. That novel conclusion contravenes Baze.
Indeed, Baze and Glossip’s method-of-execution standard would be internally inconsistent if the “feasible and readily implemented” inquiry took into account a state’s opposition—via legislation or another means—to an execution alternative. A state’s refusal to adopt a viable execution alternative is the very conduct that gives rise to an Eighth Amendment .violation under Baze and Glossip. See id., 128 S.Ct. at 1532. The Eighth Amendment prohibits states from ignoring an “objectively intolerable risk of harm” when imposing punishment. See id. at 49-50, 128 S.Ct. at 1530-31 (internal quotation marks omitted). The method-of-execution standard implements this constitutional protection. When a state uses a dangerous method of execution and “refuses to adopt” an alternative that is feasible, readily implemented, and significantly safer than the state’s method, the state ignores an avoidable risk of harm, thereby violating the Eighth Amendment. See id. at 52, 128 S.Ct. at 1532.
The Majority’s decision allows this exact conduct to shield a state from method-of-execution liability. According to the Majority, Alabama has legislatively opposed the firing squad, and that “refus[al] to adopt” the firing squad defeats Arthur’s method-of-execution claim. See id. at 52, 128 S.Ct. at 1532. That application of Baze and Glos-sip is clearly inconsistent with those precedents. State law cannot render the firing squad not feasible and readily implemented.
B. The Supremacy Clause
Beyond its incongruence with Baze and Glossip, the Majority’s treatment of state law conflicts with the Supremacy Clause. In determining that state law can thwart an execution alternative, the Majority improperly grants states the power to dictate the scope of federal constitutional relief. See U.S. Const, art. VI, cl. 2 (“[The Constitution] shall be the supreme Law of the Land ... Laws of any State to the Contrary notwithstanding.”). The upshot of this novel allocation of power is that a state statute can abrogate prisoners’ Eighth Amendment right to a humane execution.
Under the Majority’s decision, § 15-18-82.1 constricts Eighth Amendment relief and protects Alabama from claims that are viable under Baze and Glossip. The Eighth Amendment guarantees method-of-execution relief when a prisoner identifies any viable alternative. See Baze, 553 U.S. at 51-52, 128 S.Ct. at 1531-32; Glossip, 135 S.Ct. at 2737-39. However, because the only method of execution that § 15-18-82.1 currently authorizes for Arthur is lethal injection, Arthur must identify a viable lethal-injection-based alternative to obtain method-of-execution relief. Any other type of alternative is not contemplated by § 15-18-82.1 and is not feasible and readily implemented.[8] Section 15-18-82.1 thus severely restricts the circumstances in *1329 which Arthur can obtain method-of-execution relief. This narrowing of Arthur’s access to relief flouts the Supremacy Clause; states cannot override the Constitution’s protections. See Reynolds v. Sims, 377 U.S. 533, 582-84, 84 S.Ct. 1362, 1392-93, 12 L.Ed.2d 506 (1964) (“When there is an unavoidable conflict between the Federal ... Constitution [and state law], the Supremacy Clause of course controls.”); Cox v. Louisiana, 348 F.2d 750, 752 (5th Cir. 1965) (“When a [s]tate ... [limits] citizens [in] the exercise of their constitutional rights[,] ... the federal system is imperiled.”).
The Majority’s state-law determination however does not merely allow states to constrict prisoners’ Eighth Amendment rights—it permits states to abrogate such rights. Moving forward, a state can pass legislation requiring all executions to be performed with a certain gas chamber protocol or a certain electrocution protocol, and since the legislation would authorize only those two particular protocols, no other protocol or method of execution would be feasible and readily implemented. As a result, even in the face of evidence that both protocols are excruciatingly painful, condemned prisoners could never obtain relief from the protocols—it would be impossible to meet Baze and Glossip’s “execution alternative” requirement, and Baze and Glossip provide the only avenue for method-of-execution relief. The state’s legislation would thus nullify prisoners’ right to a humane execution.
Although this example is merely a hypothetical, it underscores the troubling constitutional issues that arise from the Majority’s decision. The decision allows state law to trump the Eighth Amendment’s basic guarantee against cruel and unusual punishment.[9] ■ Contra U.S. Const, art. VI, cl. 2.
IV. THE MAJORITY’S DECISION FORECLOSES RELIEF FOR PRISONERS ACROSS THIS CIRCUIT WHO ARE DESIGNATED TO DIE BY LETHAL INJECTION.
Prisoners in Alabama and Florida[10] who, like Arthur, are designated to die by lethal injection must now identify a viable lethal-injection-based alternative to obtain method-of-execution relief. But given the “difficult realities” surrounding lethal injection drugs, that is not practicable. See Brief of Defendant-Appellee at 10, Arthur v. Comm’r, Ala. Dept. of Corr., 840 F.3d 1268, No. 16-15549 (11th Cir. Oct. 11, 2016) *1330 (noting the practical barriers to identifying a viable lethal-injection-based alternative). Due to the scarcity of and secrecy surrounding lethal injection drugs, it is all but impossible, for a prisoner to set forth a viable lethal-injection-based alternative. The Majority’s decision therefore checkmates countless Alabama and Florida pris-onérs, nullifying their' constitutional right to a humane execution.
Many condemned prisoners have attempted to propose lethal injection drug alternatives in method-of-execution cases but those attempts have been futile because lethal injection drugs are extremely scarce. See, e.g., Glossip, 135 S.Ct. at 2738 (rejecting a method-of-execution claim after finding that “Oklahoma has been unable to procure [two formerly widely-used lethal injection] drugs despite a good-faith effort to do so”); Brooks, 810 F.3d at 820-21; Chavez, 742 F.3d at 1274 (Carnes, C.J., concurring) (discussing the scarcity of lethal injection drugs); Sepulvado v. Jindal, 729 F.3d 413, 416 (5th Cir. 2013) (“Since 2010, the first drug in [Louisiana’s former lethal injection] procedure—sodium thio-pental—has been unavailable.”); cf. Wood v. Ryan, 759 F.3d 1076, 1097 (9th Cir. 2014) (Bybee, J., dissenting) (remarking that “Tennessee recently reauthorized the use of the electric chair as an alternative method of execution” due to concerns about the unavailability of “the drugs necessary to perform a lethal injection”), vacated, — U.S. -, 135 S.Ct. 21, 189 L.Ed.2d 873 (2014); Distanislao, Note, 49 U. Rich. L. Rev. at 804-05 (“[A]mid ... widespread drug shortages, capital punishment is losing its position as a functional element of American society.”). In fact, Arthur himself proffered to the district court two alternative lethal injection drug compounds, but the distinct court rejected those proposed alternatives after discovery, finding, them unavailable to Alabama. See Arthur v. Dunn (Dunn I), No. 2:11—cv-438-WKW-TFM, slip op. at 19-21, 2016 WL 1551475 (M.D. Ala. Apr. 15, 2016); Brief of Defendant-Appellee at 10, Arthur, No. 16-15549. And the Majority now affirms that finding. See Maj. Op. at 1301,1306.
Furthermore, to the extent that some limited supply of viable, alternative lethal injection drugs exists, prisoners cannot gather the information needed to use those drugs, in a method-of-execution claim because details about lethal injection drugs and their suppliers are heavily concealed. See, e.g., Arthur v. Thomas, 674 F.3d 1257, 1263 (11th Cir. 2012) (per curiam) (noting “the veil of secrecy that surrounds Alabama’s execution protocol”); Terrell v. Bryson, 807 F.3d 1276, 1281 (11th Cir. 2015) (Martin, J., concurring) (discussing Georgia’s lethal injection “secrecy rules”). This veil of secrecy is evident here. Arthur was stonewalled in his attempts to gather information about the availability of the drugs in his proposed lethal injection compounds. According to testimony from an expert witness who asked members of the drug community about the availability of one of the compounds, “none of the pharmacists” that he spoke to “provided [him] permission to share their names [or] contact information.” See Arthur v. Dunn (Dunn II), No. 2:11-cv-438-WKW-TFM, slip op. at 41, — F.3d -, 2016 WL 3912038 (M.D. Ala. July 19, 2016). Another expert witness also spoke to the secrecy surrounding the compound, stating, “I have no -knowledge of where any state has [in the past] secured [the compound].” See Dunn I, slip op. at 11 n.5.
The scarcity of and secrecy surrounding lethal injection drugs make it basically impossible to identify a “feasible” and “readi *1331 ly implemented” lethal-injection-based alternative that “significantly reduce[s] a substantial risk of severe pain.” See Baze, 553 U.S. at 52, 128 S.Ct. at 1532; Glossip, 135 S.Ct. at 2737. This bears out in our case law. Based on my research, no prisoner has ever successfully challenged his method of execution relying on a lethal-injection-based alternative.
Accordingly, the Majority’s decision all but forecloses method-of-execution relief for a myriad of Alabama and Florida prisoners.[11] This case is telling. Arthur proffered an execution alternative that was not lethal-injection-based, but the Majority’s interpretation of § 15-18-82.1 thwarted that potentially safe and available alternative, leaving Arthur with, no choice but to rely solely on lethal-injection-based alternatives. Arthur attempted to identify such an alternative but was stymied by the limited supply of lethal injection drugs and the secrecy surrounding such drugs. Checkmate.
Y. CONCLUSION
The Majority misinterprets Alabama law, reads a new restriction into Baze and Glossip that is directly at odds with those decisions, and empowers states to thwart constitutional claims. Taken together, these errors have jarring practical consequences; relief under Baze and Glossip is now a mirage for prisoners across this circuit.
Arthur is entitled to amend his complaint and proceed with his method-of-execution claim proposing the firing squad.[12] I respectfully dissent;
APPENDIX
In offering the firing squad as an execution alternative, Arthur’s proposed complaint states:
Alternative # S—Firing Squad
134. ■ A third potential alternative is the firing squad. The Supreme Court has held that the firing squad is a constitutionally permissible form of. execution. See Wilkerson v. Utah, 99 U.S. 130, 134-35, 25 L.Ed. 345 (1879) (upholding sentence of death by firing squad). Indeed, as recently-as 2010 Utah executed an inmate by firing squad. On March 23, 2015, Utah Governor Gary Herbert signed into law an- amendment providing that firing squads will serve as the backup method of execution if lethal injection drugs are not available.
135. Protocols for execution by firing squad, which has been carried out at *1332 least three times since 1976 without apparent incident, are known and available. For example, under Utah’s recent law, the prisoner is seated in a chair set up between stacked sandbags to prevent the bullets from ricocheting. A target is pinned over the inmate’s heart. Five shooters are set up approximately 25 feet from the chair where the prisoner is seated, with .30 caliber Winchester rifles pointing through slots in the wall. The gunmen are chosen from a pool of volunteer officers. (Utah Rep. Paul Ray, the sponsor of the firing squad bill, has said that there are always more volunteers than spots on the firing squad. Upon information and belief, the same would be' true in Alabama and/or the State would otherwise be able to supply officers to carry out an execution.) The shooters’ identities are kept anonymous, and one rifle is loaded with a blank so that no one knows which officer killed the inmate.
136. The firing squad is a known and available alternative in the state of Alabama. Upon information, and belief, there are numerous people employed by the State who have the training necessary to successfully perform an execution by firing squad. The State already has a stockpile of both weapons and ammunition.
137. Moreover, execution ' by firing squad, if implemented properly, would result in a substantially lesser risk of harm than the State’s continued use of a three-drug protocol involving midazo-lam. Evidence and recent experience strongly suggest that the-firing squad is “significantly more reliable than other methods.” Glossip, 135 S.Ct. at 2796 (So-tomayor, J., dissenting). A recent study, which analyzed the contemporaneous news reports of all executions in the United States from 1900 to 2010, found that 7.12% of the 1,054 executions by lethal injection were “botched” and that 0 of the 34 executions by firing squad had been botched.
138.Accordingly, if implemented properly, an execution by firing squad is a known and available alternative method of execution that presents a substantially lower risk of pain and suffering than the current [Alabama Department of Corrections] protocol described above.
Motion for Leave to File Third Amended Complaint, Exhibit A at 43-44, No. 2:11-CV-438-WKW-TFM (M.D. Ala. Aug. 25, 2015), ECF No. 256-1 (footnotes omitted).

. In recent years, several scholars have advocated for wider use of the firing squad, See Deborah W. Denno, The Firing Squad. As “A Known and Available Alternative Method of Execution" Post-Glossip, 49 U. Mich. J. L. Reform 749 (2016); P. Thomas Distanislao, III, Note, A Shot in the Dark: Why Virginia Should Adopt the Firing Squad As Its Primary Method of Execution, 49 U. Rich. L. Rev. 779 (2015); Alexander Vey, Note, No Clean Hands in a Dirty Business: Firing Squads and the Euphemism of “Evolving Standards of Decency", 69 Vand. L. Rev. 545 (2016). One such scholar concluded that "the firing squad is the most viable ‘known and available [execution] alternative’.... Indeed, [it] is the only current form of execution involving trained professionals, and it delivers a swift and certain death.” Denno, 49 U. Mich. J. L. Reform at 753 (quoting Glossip, 135 S.Ct. at 2731).

. Given that Arthur requested to amend his complaint immediately after the Supreme Court’s decision in Glossip, the Majority's conclusion that the request is barred by lach-es is unavailing. Indeed, in a similar case, the same district court judge who presided over Arthur’s proceedings rejected the Majority's position. In Boyd v. Myers, the prisoner—a few weeks after the Glossip decision—sought to amend his complaint to include the firing squad, and the State argued that the request was untimely. See No. 2:14-cv-1017-WKW, slip op. at 6-7, 2015 WL 5852948 (M.D. Ala. Oct. 7, 2015). The district court judge concluded that, because “Glossip clarified” the "execution alternative” requirement and the prisoner made his request shortly after Glos-sip, the request was timely. See id. at 6, 10.

. As an initial matter, the Majority appears to confuse the posture of Arthur’s firing-squad claim. Arthur has only moved to add to his complaint the firing-squad claim. He has not been provided an opportunity to proceed to discovery, summary judgment, or trial on the claim. Evidence and proof therefore have no relevance in the discussion of whether the district court erred in denying Arthur relief on this issue. However, in arguing the futility of Arthur’s request, the Majority emphasizes Arthur’s failure to "present any admissible evidence”—a feat that Arthur is expected to accomplish in the absence of the amended pleading and corresponding discovery.
Although a district court has discretion in whether to grant a request to amend the complaint, the court in denying the request must articulate a valid reason for the denial. See 3-15 Moore’s Federal Practice § 15.15 (Matthew Bender 3d ed.) ("[A] trial court must provide a reason for denying a motion to amend.”); Fed. R. Civ. P, 15(a)(2) ("The court should freely give leave [to amend a pleading] when justice so requires.”). The Majority claims that the district court could have listed several reasons for its denial here, but the court offered only one reason; futility due to an Alabama statute. We review a finding of futility de novo. Mizzaro v. Home Depot, Inc., 544 F.3d 1230, 1236 (11th Cir. 2008). And this dissent argues that under de novo review, the Majority’s finding of futility based on Alabama law is erroneous.

. The Majority however muddies this finding, as it also appears to reach a contradictory conclusion: that Alabama cannot turn to a non-designated method of execution unless a prisoner attacks both electrocution and lethal injection.

. Lethal injection is not a unitary form of execution; it is a category of execution that can be carried out using a variety of methods. I use the term '‘lethal-injection-based execution alternative” to refer to an execution method that falls within that category.

. Of course, this determination is inconsistent with the Majority's suggestion that Alabama cannot turn to the firing squad absent an attack on both lethal injection and electrocution.

. While concluding that Arthur must rely on an alternative currently authorized by § 15-18-82.1, the Majority indicates that, under its reading of § 15-18-82.1, Arthur could have obtained relief based on an alternative that is not currently authorized if he successfully raised a per se challenge to lethal injection or electrocution. However, that point is a red herring. First, a prisoner such as Arthur who Alabama plans to kill via lethal injection has no standing to challenge electrocution. Second, it strains credulity to suggest that Arthur could, at this time, raise a legitimate argument that lethal injection is per se unconstitu *1329 tional. Lethal injection is a category of execution that can be carried out in a variety of ways. A finding that lethal injection is per se unconstitutional would require a finding that every possible method of lethal injection is unconstitutional. Hence, it was not feasible for Arthur to successfully bring a per se challenge to electrocution or lethal injection. Such challenges do not provide a means for Arthur or others to obtain relief based on a method of execution not currently authorized by § 15-18-82.1.

. These serious constitutional concerns provide yet another reason why the Majority’s interpretation of § 15-18-82.1 is improper. Even if the text of the statute is susceptible both to the reading the Majority ascribes and to the one advanced above, because the reading advanced above avoids a clash with the Supremacy Clause, it is the-one that must be employed. See Clark v. Martinez, 543 U.S. 371, 381, 125 S.Ct. 716, 724, 160 L.Ed.2d 734 (2005).

. As previously noted, because Florida has a statute that is identical to § 15-18-82.1, the Majority’s decision has the same consequences for Florida and Alabama prisoners. Compare Ala. Code § 15-18-82.1, with Fla. Stat. § 922.105.

. The Majority's decision may also chill the rights of prisoners outside our circuit. Several states have legislation similar to § 15—18— 82.1. Compare Ala. Code § 15-18-82.1, with, e.g., Tenn. Code § 40-23-114 (2014); Ky. Rev. Stat. § 431.220-223 (1998).

. In addition to finding that the firing squad is not feasible and- readily implemented, the Majority opines that the district court’s denial of Arthur’s request to amend was not error because Arthur has failed to prove that Alabama’s three-drug lethal injection protocol is sure or very likely to cause serious harm. Based on the posture of this cáse, that is not a proper basis for affirming the district court. The parties have not litigated whether Alabama’s protocol, as a general matter, is sure or very likely to cause serious harm. The district court dismissed all of Arthur's general method-of-execution claims based on the “execution alternative” requirement, and Arthur’s as-applied challenge did not present the issue of whether the protocol is sure or very likely to cause serious harm to prisoners. Because the parties have not litigated that issue, the Majority’s reliance on the issue is misplaced.